3:25-mj-00214

DISTRICT OF OREGON, ss:        AFFIDAVIT OF JOHN NICHOLAS OLIVER

**Affidavit in Support of a Criminal Complaint and Arrest Warrant**

I, John Nicholas Oliver, being duly sworn, do hereby depose and state as follows:

## Introduction and Agent Background

1. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since July 2022. My current assignment is to the Portland Field Office and specifically to the Bend Resident Agency. My training and experience include investigating federal crimes that occurred on Indian Reservations; sexual assault; assault; theft; and felons in possession of a firearm. Before the FBI, I was employed with the Flagstaff Police Department in Arizona for five years.

2. I submit this affidavit in support of a criminal complaint and arrest warrant for Clarance Vernon Leroy SAM (DOB XX/XX/2003) (hereinafter "SAM"), for Assault with a Dangerous Weapon, in violation of Title 18 U.S.C. §§ 113(a)(3) and 1153, and Assault Resulting in Serious Bodily Injury, in violation of Title 18 U.S.C. §§ 113(a)(6) and 1153. As set forth below, there is probable cause to believe, and I do believe, that Clarance SAM committed Assault with a Dangerous Weapon, in violation of Title 18 U.S.C. § 113(a)(3) and 1153, and Assault Resulting in Serious Bodily Injury, in violation of Title 18 U.S.C. § 113(a)(6) and 1153.

## Applicable Law

3. Title 18, United States Code, Section 113(a)(3) "Assault with a Dangerous Weapon" makes it unlawful for an individual, within the special maritime and territorial jurisdiction of the United States, to commit an assault, by intentionally striking or wounding another with a dangerous weapon with intent to do bodily harm.

4.      Title 18, United States Code, Section 113(a)(6) "Assault Resulting in Serious Bodily Injury" makes it unlawful for an individual, within the special maritime and territorial jurisdiction of the United States, to commit an assault, by intentionally striking or wounding another that results in the victim suffering serious bodily injury. "Serious bodily injury" means bodily injury that involves (1) a substantial risk of death; (2) extreme physical pain; (3) protracted and obvious disfigurement; or (4) protracted loss or impairment of the function of a body part, organ, or mental faculty.

5.      Jurisdiction for this crime in Indian Country is governed by 18 U.S.C. Section 1153 – the Major Crimes Act. The Confederated Tribes of the Warm Springs Indian Reservation (CTWS) is Indian Country within the special maritime and territorial jurisdiction of the United States as defined by 18 U.S.C. § 1151. Here, there is federal jurisdiction because the crimes occurred in Indian Country and were committed by an enrolled member of the Confederated Tribes of Warm Springs.

## Statement of Probable Cause

6.      On July 26, 2025, Warm Springs Police Department (WSPD) responded to 6391 Salmon Drive, Warm Springs, Oregon, a residence within the exterior boundaries of the Confederated Tribes of Warm Springs Indian Reservation, for a report of an assault that occurred there. A WSPD officer observed blood on the ground in several locations, including in a shack connected to the residence and outside the residence. Officers contacted Adult Victim 1 (AV1), who is SAM's aunt. SAM and AV1 reside together at 6391 Salmon Drive, Warm Springs, Oregon.

7. Officers observed that AV1 was bleeding from the head and medics were requested to provide treatment. Officers spoke to AV1, who stated that SAM struck her in the head with a baseball bat during an altercation. Officers located a metal baseball bat in the above-mentioned shack and seized it as evidence. AV1 was transported to St. Charles Medical Center via helicopter for her injuries. SAM was no longer at the residence when WSPD officers arrived and was not located by police on July 26.

8. On July 27, 2025, I spoke to AV1, who stated that, on July 26, 2025, she went swimming with SAM and some other family members in the evening before dark. SAM was intoxicated when the group arrived back at the house. SAM was yelling profanities. AV1 and her friend, Adult Witness 1 (AW1) confronted SAM and told him stop. SAM left the residence to get more alcohol and then returned. At approximately 9:30 p.m., AV1 prepared dinner for her and her son, Minor Witness 1 (MW1). SAM was yelling at AV1. AV1 attempted to ignore SAM and asked him to leave her alone.

9. AV1 and MW1 went outside to the shack and locked the door to avoid SAM. SAM followed AV1 outside and forced his way into the shack. AV1 grabbed a metal baseball bat to protect herself. AV1 tried to hold the door of the shack closed, but SAM pushed his way inside and took the bat out of AV1's hands. AV1 pushed SAM and kneed him in the groin. SAM struck AV1 on the head with the bat. AV1 fell over. At some point, while on the ground, AV1 lost consciousness. AV1 believed SAM took the cell phones of the other people at the residence so they could not call 911.

10. AV1 reported that she did not remember her birthday while being transported via helicopter to the hospital. AV1 had two staples on the top right side of her head holding together

an approximate two-inch laceration that appeared bloody. AV1's head was sore to the touch. She complained of a concussion and pain in her side. I photographed the laceration on AV1's head.

11. On July 27, 2025, SAM came to WSPD to turn himself in. WSPD officers placed SAM under arrest and transported him to Jefferson County Sheriff's Office, where I interviewed him. I provided SAM with his *Miranda* warnings. SAM stated he understood his rights and was willing to speak to me without a lawyer present. SAM stated he drank four to five Twisted Teas while swimming on July 26, 2025. Later, at the house, SAM was talking to someone at the residence while sitting in a truck when AW1 punched SAM in the face. SAM chased AW1 and punched him back. Later, SAM went to the Rainbow Market and purchased a 40oz bottle of liquor. He drank about half of it before he "blacked out." SAM remembered being in an argument with AV1, but did not remember any details. SAM ran from his house when he heard someone yell "cops." SAM woke up on his cousin's couch the next day. His grandmother brought him to the police department.

12. SAM is an enrolled member of the Confederated Tribes of Warm Springs (CTWS).

13. I know from training and experience that a metal baseball bat can be used in a manner that can cause serious bodily injury or death.

## Conclusion

14. Based on the foregoing, I have probable cause to believe, and I do believe, that Clarance SAM committed Assault with a Dangerous Weapon, in violation of 18 U.S.C. §§ 113(a)(3) and 1153 and Assault Resulting in Serious Bodily Injury, in violation of 18 U.S.C. §§

113(a)(6) and 1153. I therefore request that the Court issue a criminal complaint and arrest warrant for SAM.

15. Prior to being submitted to the Court, this affidavit, the accompanying complaint and the arrest warrant were all reviewed by Assistant United States Attorney (AUSA) Charlotte Kelley, and AUSA Kelley advised me that in her opinion the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

<em><u>By phone pursuant to Fed. R. Crim. P. 4.1</u></em><br>
JOHN NICHOLAS OLIVER<br>
Special Agent, FBI

Sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at __5:08 pm__, on July __28__, 2025.

<em>Youlee Yim You</em><br>
HONORABLE YOULEE YIM YOU<br>
United States Magistrate Judge